Bergen Fabrics Corporation v. Commissioner.
Bergen Fabrics Corp. v. Commissioner
Docket No. 10985.
United States Tax Court
1948 Tax Ct. Memo LEXIS 221; 7 T.C.M. (CCH) 187; T.C.M. (RIA) 48048; April 7, 1948
*221 Held, under the facts and circumstances amounts paid as salaries to the three officers of petitioner for the taxable year 1941 were reasonable in amount and for personal services actually rendered. Joseph Walker, Esq., and Joseph Kantor, C.P.A., for the petitioner. Fred R. Tansill, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The sole question involved in this proceeding is whether salaries paid by petitioner during the taxable year to its three officers and claimed as a deduction from gross income are reasonable in amount and for personal services actually rendered. Findings of Fact Petitioner was incorporated under the laws of the State of New York in 1937 to engage in the business of textile converting. It filed its *222 return for the calendar year 1941 with the collector for the third district of New York. The taxes in controversy are income and excess profits taxes for the calendar year 1941 in the respective amounts of $1,985.92 and $3,296.43. The salaries paid to and received by the officers of the corporation, the amounts allowed by the Commissioner and the amounts disallowed are as follows: Salary
Allowed
Disallowed
President, Irving L. Goldberg
$ 8,195.00
$ 4,195.00
$ 4,000.00
Vice-President, Thomas J. Riordan
10,122.15
6,122.15
4,000.00
Secretary-Treasurer, Joseph L. Cohen
8,195.00
4,195.00
4,000.00
Total
$26,512.15
$14,512.15
$12,000.00
Petitioner converted and sold rayon and other fabrics primarily to the feminine apparel trade. It purchased the raw materials from the weaving mill in the unfinished or gray state. It prepared and selected the patterns and specifications for finishing, printing and dyeing. The materials were then sub-contracted to printers, finishers, or dyers who would, in accordance with specifications and instructions from petitioner, print or dye the fabrics. After receiving the goods back from the sub-contractors in the finished *223 state in the form of bolts of cloth, petitioner would sell the finished products wholesale to factors or to clothing manufacturers. Effective styling and designing and the exercise of sound merchandising judgment are basic elements of a successful converting operation. In 1941 petitioner employed about ten people in addition to its officers. Petitioner began business in 1937 with a capital of $10,500 paid in by Goldberg and Cohen. In 1941 it had a paid-in capital of $28,000 represented by 280 shares of $100 par value stock then issued and outstanding, 240 shares of which were held by the president, Goldberg, and 40 by the secretary-treasurer, Cohen. From 1937 through 1941 petitioner had no other stockholders. Riordan was vice-president during 1941 but not a stockholder. Petitioner did not declare or pay any dividends from the time of its incorporation in 1937 through 1941. The following schedule reflects the net sales, gross profit, net profit before salaries, net profit after salaries, net worth, and percentage return on net worth for the years stated: Net Profit
Net Profit
Percentage
Gross
before
after
Return on
Year
Net Sales
Profit
Salaries
Salaries
Net Worth
Net Worth
1939
$297,537.96
$26,335.56
$ 6,711.46
($1,458.54)
$17,099.30
( 8.53)
1940
341,709.51
39,678.71
9,193.34
293.34
25,640.76
1.05%
1941
484,562.10
75,631.09
33,480.10
6,967.95
25,934.10
26.87%
*224 During the latter part of 1940, Goldberg, Cohen and Riordan had discussions regarding salaries for 1941. Goldberg and Cohen agreed to pay Riordan $7,500 plus 25 per cent of the profits for that year, with an option to purchase into the corporation to the extent of a 25 per cent interest. They agreed they would each draw $8,500 in order to provide a basis for determining Riordan's part of the profits. In 1941 Riordan was offered from $12,000 to $15,000 per annum as salary by two competitive firms. Goldberg had spent 18 years in the textile and apparel industry prior to the formation of petitioner, 10 years with one firm and 8 years with another, had supervised the piece goods department of an apparel manufacturer and assisted in styling and designing garments. He was familiar with the textile converting business. His earnings immediately prior to the formation of petitioner, in a job involving no financial investment, were about $6,000 per annum. He was in charge of purchasing raw materials and processing them into the finished state, having them dyed and finished. He at first supervised, and later when Riordan was employed he assisted in styling, in merchandising and in distribution. *225 He was manager of the office, shared in all policymaking functions, devoted full time to the work which involved long hours, and had direct supervision of outside dyers and finishers. Cohen's services and duties to petitioner prior to and during 1941 were selling, and employing and supervising other salesmen. In 1941 he opened, and for a period of seven months managed, a branch office in Los Angeles, California; he participated in overall policy making and in general managerial functions relating to the merchandising and distribution of petitioner's products, devoting full time to the business. Riordan was employed by Goldberg and Cohen in 1939 in recognition of his background and knowledge of the piece goods industry and as part of a program of expansion. He was induced to accept such employment by the prospects of growing with the business. His employment was attended by expansion of petitioner's business in sytled fabrics. His chief function was to contact appropriate sources of supply and to style such fabrics. He also assisted in selling and distribution and all other details of the business, devoting his full time and attention to its affairs. From 1937 through 1940 the *226 salaries of Goldberg and Cohen, the sole stockholders, were approximately $4,000 each. They were interested in building up the net worth and credit position of petitioner and drew lower salaries than what they felt their services were worth. In 1938 and 1939 Riordan's total income was about $5,000 to $6,000. In 1940 it was around $4,000. Because of the increased volume of business in 1941 the duties and services of the three officers were greater and more timeconsuming than in prior years. The salaries paid Goldberg, Cohen and Riordan in 1941 were reasonable in amount and for personal services actually rendered. Opinion The only question presented is whether the amounts paid by petitioner to its three officers, as set forth in our findings of fact, are reasonable in amount and for personal services actually rendered. If so, the amounts so paid are deductible from gross income for the calendar year 1941 under section 23 (a), Internal Revenue Code. The respondent, in his determination of the deficiency, allowed $14,512.15 of the $26,512.15 paid as salaries to its three officers in 1941 as reasonable in amount and for personal services actually rendered. *227 He disallowed $12,000 of the total salaries paid to the three officers, or $4,000 of the amount paid to each, as excessive. The burden rests upon petitioner to show that respondent erred in disallowing the $12,000 of the total salaries paid to its three officers. Many cases dealing with the reasonable allowance for salaries or other compensation for personal services actually rendered have been before this Court. We have consistently held that the particular facts and circumstances in each case are controlling. Considering all the facts and circumstances we think respondent erred in disallowing the $12,000 so paid as excessive. We have set forth the facts in considerable detail in our findings and will here refer to but a few which lead us to this conclusion. Goldberg and Cohen started the business in 1937 with a paid-in capital of $10,500. In 1941 the paid-in capital was $28,000 represented by 280 shares of $100 par value of which Goldberg held 240 shares and Cohen 40 shares. From 1937 through 1941 petitioner had no other stockholders. During the latter part of 1939 in recognition of his background and knowledge of the piece goods industry and as part of its program of expansion *228 Riordan was employed. During the latter part of 1940 the three officers had discussions among themselves regarding salaries for 1941. It was agreed that Riordan should receive a salary of $7,500 plus 25 per cent of the profits for that year with an option to buy into the corporation to the extent of a 25 per cent interest. As Goldberg owned 240 of the outstanding shares, Cohen 40 and Riordan none, it is not likely that Goldberg would have agreed to pay either Riordan or Cohen more than their services were reasonably worth. It would be against his interest to do so. The payment of unreasonable salaries would reduce the amount of net income available for distributions as dividends. Based on his stockholdings he would be entitled to the 6/7ths part thereof. It was further agreed that as a basis for determining Riordan's part of the profits Goldberg and Cohen would each draw $8,500. To be successful the textile converting business in which they were engaged required special knowledge, experience and skill in styling and designing, preparing and selecting the patterns for finishing, printing and dyeing. The finished product must be made attractive to the trade. The raw materials were *229 purchased from the mill in the unfinished or gray state, subcontracted to the printers, finishers and dyers to be printed or dyed in accordance with the specifications and instructions from petitioner. After receiving the fabrics back from the printers or dyers in the finished state in the form of bolts of cloth, effective marketing and merchandising judgment was necessary for the success of the business. The three officers possessed these necessary qualifications. They all worked long hours and devoted full time to the business. While their duties and activities overlapped to considerable extent they worked together in a cooperative way and through their personal efforts made the business the success it was. Goldberg and Cohen were responsible for the development and growth of the business in former years. Riordan came in during the latter part of 1939 as an employee. The business had a steady growth during the years 1939, 1940 and 1941, as shown in our findings. The last year was its best. The success of the business in 1941 was due largely to the personal skill and knowledge of the business and the time and energy devoted thereto by these three officers. The salaries paid were *230 not in the nature of a distribution of dividends as frequently arises in cases of closely held corporations. The salaries paid bore no relationship whatever to stock ownership as hereinabove set forth. Nor were general trade conditions responsible in any material degree to the increase in 1941 over 1940 and preceding years in net sales, gross profit, net profits before and after salaries and the percentage of return on net worth, as set forth in our findings. We think the salaries paid were reasonable in amount, for personal services actually rendered and are deductible from petitioner's gross income for the taxable year. Decision will be entered under Rule 50.